McGREGOR W. SCOTT
United States Attorney
ROBERT J. ARTUZ
Special Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:19-CR-129-MCE |
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE:     May 7, 2020<br>TIME:     10:00 AM |
| MONICA NUNES,<br>    Defendant. | COURT:  Hon. MORRISON C. ENGLAND, JR. |

## I.    INTRODUCTION

### A.    Scope of Agreement.

The Indictment in this case charges the defendant, MONICA NUNES, with a violation of 18 U.S.C. § 1349 – Conspiracy to Commit Bank Fraud (Count One); 18 U.S.C. § 1344 – Bank Fraud (Counts Two through Eleven); and 18 U.S.C. § 1028A – Aggravated Identity Theft (Count Twelve). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.    Court Not a Party.

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in

PLEA AGREEMENT                                    1

the Indictment.  The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II.    DEFENDANT'S OBLIGATIONS

### A.    Guilty Plea.

The defendant will plead guilty to Count One, a violation of 18 U.S.C. § 1349 – Conspiracy to Commit Bank Fraud. The defendant agrees that she is in fact guilty of this charge and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that she will not be allowed to withdraw her plea(s) should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B.    Restitution.

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Defendant agrees that her conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis, victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. §

3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged. Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court. Defendant further agrees that she will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

### C. Fine.

The parties agree that no fine is appropriate in this case.

### D. Special Assessment.

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if she fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### E. Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).

If the defendant, cooperating or not, violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to

pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### F.    Forfeiture.

The defendant agrees to abandon and forfeit to the Federal Bureau of Investigation voluntarily and immediately all of her right, title, and interest to any and all seized items, including, without limitation, the following seized items: electronic devices containing personally identifiable information of third parties and unauthorized merchant information, including computers, terminals, laptops, smart phones, tablets, and storage devices. The defendant agrees to waive her right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

1   **G.    Asset Disclosure.**

2        The defendant agrees to make a full and complete disclosure of her assets and financial

3   condition, and will complete the United States Attorney's Office's "Authorization to Release

4   Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change

5   of plea, including supporting documentation.  The defendant also agrees to have the Court enter an order

6   to that effect. The defendant understands that if she fails to complete truthfully and provide the

7   described documentation to the United States Attorney's office within the allotted time, she will be

8   considered in violation of the agreement, and the government shall be entitled to the remedies set forth

9   in section II.E above, above.

10              **III.    THE GOVERNMENT'S OBLIGATIONS**

11   **A.    Dismissals/Other Charges.**

12        The government agrees not to bring any other charges arising from the conduct outlined in the

13   Factual Basis attached hereto as Exhibit A and complete as of the date the plea agreement is signed by

14   all parties.  The government also agrees not to reinstate any dismissed count except if this agreement is

15   voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by

16   Defendant/Withdrawal of Plea(s)), VI.B (Estimated Offense Level Calculations), and VII.B (Waiver of

17   Appeal and Collateral Attack) herein.

18   **B.    Recommendations.**

19              1.    Incarceration Range.

20        The government will recommend that the defendant be sentenced to the low end of the

21   applicable guideline range as determined by the Court.

22              2.    Acceptance of Responsibility.

23        The government will recommend a two-level reduction (if the offense level is less than

24   16) or a three-level reduction (if the offense level reaches 16) in the computation of her offense level if

25   the defendant clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. §

26   3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of

27   the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging

28   in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the

preparation of the pre-sentence report or during the sentencing proceeding.

C.     **Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.     ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, Count One, a violation of 18 U.S.C. § 1349 – Conspiracy to Commit Bank Fraud:

> First, beginning in or about July 2017, and continuing through in our about February 2019, there was an agreement between two or more persons to commit bank fraud in violation of 18 U.S.C. § 1344; and

> Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense of bank fraud, a violation of 18 U.S.C. § 1344:

> First, the defendant knowingly executed a scheme to defraud a financial institution as to a material matter;

> Second, the defendant did so with the intent to defraud the financial institution; and

> Third, the financial institution was insured by FDIC.

## V.     MAXIMUM SENTENCE

A.     **Maximum Penalty.**

The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1349 (Conspiracy to Commit Bank Fraud) is 30 years of incarceration, a fine of $1,000,000, a 5-year period of supervised release, and a special assessment of $100.

By signing this plea agreement, the defendant also agrees that the Court can order the payment of

PLEA AGREEMENT                                                6

restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count(s) to which she is pleading guilty. The defendant further agrees, as noted above, that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B.     Violations of Supervised Release.**

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to three additional years imprisonment.

## VI.     SENTENCING DETERMINATION

**A.     Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.     Estimated Offense Level Calculations.**

The government and the defendant agree that the following is their present best estimate of the defendant's offense level under the sentencing guidelines. These estimates shall not be binding on the Court, the Probation Office, or the parties:

1.     Base offense level: +7 (U.S.S.G. §2B1.1(a)(1)(B))

2.     Intended loss amount: at least +16 but not more than +18 (at least over $1,500,000 or over $3,500,000 – U.S.S.G. §2B1.1(b)(1)(I) or (J))

3.     Victim-related adjustments: +2 (10 or more victims – U.S.S.G. §2B1.1(b)(2)(A))

4.  The offenses involved the production or trafficking of any unauthorized access device or counterfeit access device OR the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification: +2 (U.S.S.G. §2B1.1(b)(11)(B))

5.  Defendant relocated, or participated in relocating, the fraudulent scheme to another jurisdiction to evade law enforcement OR the offenses otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means: +2 (U.S.S.G. §2B1.1(b)(10)(A) or (C))

6.  Defendant had an aggravating role in the offenses: +2 (U.S.S.G. §3B1.1(c))

7.  Acceptance of Responsibility: See paragraph III.B.2 above

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on post-plea obstruction of justice (§3C1.1). Both parties agree not to move for, or argue in support of, any other departure from the Sentencing Guidelines.

The defendant is free to recommend to the Court whatever sentence she believes is appropriate under 18 U.S.C. § 3553(a). The government is not obligated to recommend any specific sentence.

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights.

The defendant understands that by pleading guilty she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on her behalf; (f) to confront and cross-examine witnesses against her; and (g) not to be compelled to incriminate herself.

### B.   Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence. The defendant agrees as part of her plea(s), however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which she is pleading guilty. The defendant

understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate her plea(s), dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights set forth in Section II.E herein.

## C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

## D. Impact of Plea on Defendant's Immigration Status.

Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offense(s) to which the defendant is pleading guilty. The defendant and her counsel have discussed the fact that the charge to which the defendant is pleading

1  guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under

2  8 USC § 1101(a)(43), and that while there may be arguments that defendant can raise in immigration

3  proceedings to avoid or delay removal, it is virtually certain that defendant will be removed.   Removal

4  and other immigration consequences are the subject of a separate proceeding, however, and defendant

5  understands that no one, including her attorney or the district court, can predict to a certainty the effect

6  of her conviction on her immigration status.  Defendant nevertheless affirms that she wants to plead

7  guilty regardless of any immigration consequences that her plea may entail, even if the consequence is

8  her automatic removal from the United States.

9  **VIII.   <u>ENTIRE PLEA AGREEMENT</u>**

10  Other than this plea agreement, no agreement, understanding, promise, or condition between the

11  government and the defendant exists, nor will such agreement, understanding, promise, or condition

12  exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and

13  counsel for the United States.

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

# IX.   APPROVALS AND SIGNATURES

## A.   Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated:  April 27 , 2020

/s/ *Christina Sinha*
_____
CHRISTINA SINHA
Attorney for Defendant

## B.   Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated:  April 27 , 2020

/s/ *Monica Nunes*
_____
MONICA NUNES
Defendant

## C.   Attorney for United States:

I accept and agree to this plea agreement on behalf of the government.

Dated:  April 28 , 2020

McGREGOR W. SCOTT
United States Attorney

*Robert J. Artuz*
_____
ROBERT J. ARTUZ
Special Assistant U.S. Attorney

PLEA AGREEMENT

11

EXHIBIT "A"
Factual Basis for Pleas

Beginning at least as early as July 2017, and continuing through at least February 2019, Defendant MONICA NUNES, Co-Defendant Jonathon Ward, Co-Defendant Talalima Toilolo, and others knowingly and intentionally conspired among themselves and with each other to execute, and did in fact execute, a material scheme and artifice to defraud financial institutions and to obtain the monies and property under the custody and control of financial institutions by means of materially false and fraudulent pretenses, representations, and promises. NUNES knowingly and willfully conspired to commit, and did in fact commit, a fraud scheme referred to as "refund fraud," which exploited the merchant refund process used to pay back merchant customers.

NUNES and her coconspirators obtained used point-of-sale (POS) terminals that merchants had previously used and new terminals that were intended for merchant use. Merchants used such terminals for legitimate business purposes, including the processing of access card transactions (e.g., debit and credit card purchases and refunds) at the merchants' places of business. Without merchant authorization, NUNES and her coconspirators programmed and set up the terminals using merchant ID numbers so they could operate the terminals as if they were authorized by the merchants to conduct purchase and refund transactions. NUNES and her coconspirators then used the unauthorized terminals to conduct fraudulent refund transactions. These transactions involved connecting an unauthorized terminal to a payment processor, posing as a merchant, and requesting that the processor refund a particular amount onto an access card when no real purchase had occurred. NUNES knew that these fraudulent acts resulted in payment processors approving the transactions such that financial institutions debited the merchants' accounts and credited the conspirators' access card accounts, resulting in actual or intended losses to at least the financial institutions. NUNES and her coconspirators then withdrew the money from the access card accounts.

NUNES and her coconspirators executed hundreds of fraudulent refund transactions that targeted dozens of victim merchants and their financial institutions. In committing these criminal offenses, NUNES intended to defraud the financial institutions and cause losses in excess of $1,500,000. NUNES and her coconspirators conducted these transactions at various temporary locations including homes, hotels, and motels throughout at least the Northern and Eastern Districts of California.

For example, on or about August 20, 2018, in San Joaquin County, California, NUNES and a coconspirator executed a fraudulent refund transaction for $499.99 using an unauthorized POS terminal. This transaction targeted Merchant 1 and payment processor Worldpay using a debit card having a number ending x9191. This transaction attempted to defraud Merchant 1's bank that held its merchant account. This bank was FDIC insured.

In another instance, on or about August 15, 2018, in Sacramento County, California, NUNES and a coconspirator knowingly possessed and used a means of identification of Victim 1 – including his/her name, Conduent Direct Express debit card number ending x0455, and associated Direct Express account number – without Victim 1's permission to execute and attempt to execute fraudulent refund transactions involving at least Merchant 3 in amounts of $499.99 and $200. NUNES also knew that Victim 1 was a real person.

Additionally, NUNES learned and knew information needed to set up and operate POS terminals to conduct fraudulent refund transactions, and she taught other members of the conspiracy these details.

I have reviewed the entire factual basis in Exhibit A above and, as far as my own conduct and personal knowledge is concerned, I adopt it as my own true statement.

DATED: April 27, 2020  
_____

/s/ *Monica Nunes*  
_____  
MONICA NUNES  
Defendant

PLEA AGREEMENT

A-1