PHILLIP A. TALBERT
Acting United States Attorney
ROBERT J. ARTUZ
Special Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:19-CR-0129 MCE |
|---|---|
| Plaintiff, | UNITED STATES'S SENTENCING MEMORANDUM |
| v. | |
| MONICA NUNES, | DATE: April 1, 2021<br>TIME: 10:00 a.m.<br>COURT: Hon. Morrison C. England, Jr. |
| Defendant. | |

## I. INTRODUCTION AND OVERVIEW

Plaintiff United States of America, by and through its undersigned counsel, hereby submits its position regarding the sentencing of Defendant Monica Nunes. On May 7, 2020, Nunes pleaded guilty to one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. PSR ¶ 1. The government's position is based on its investigation, the Presentence Report ("PSR"), the files and records of this case, and any arguments or testimony to be presented at the sentencing hearing. This memorandum primarily expresses the government's general agreement with the defendant's sentencing memorandum and recommendation, including a prison term of 151 months. ECF 134. Particularly, the government recommends a sentence of 151 months' imprisonment, 5 years of supervised release, a $100 special assessment fee, and restitution in an amount to be set by the Court, which is sufficient, but not greater than necessary, to meet the goals of sentencing expressed in 18 U.S.C. § 3553(a).

On August 8, 2019, Defendants Johnathon Ward, Monica Nunes, and Talalima Toilolo were charged in a 12-count indictment with Conspiracy to Commit Bank Fraud, Bank Fraud, and Aggravated

Identity Theft. ECF 1. On May 7, 2020, Nunes pleaded guilty to Count One of the Indictment – Conspiracy to Commit Bank Fraud – pursuant to a plea agreement. PSR ¶ 1; ECF 50. Similarly, on May 1, 2020, T. Toilolo pleaded guilty to the same count, and the Court sentenced him to 120 months' imprisonment on February 11, 2021. ECF 128. On July 23, 2020, the government filed a Superseding Indictment in this case charging Co-Defendant Johnathon Ward with multiple counts of Conspiracy to Commit Wire Fraud, Wire Fraud, and Aggravated Identity Theft. ECF 77. The Superseding Indictment also added Defendant Sabrina Toilolo who is the daughter of Defendant Talalima Toilolo and is charged as a participant in this same conspiracy and scheme. ECF 77. All defendants have been detained in this matter, and Defendants Ward and S. Toilolo are scheduled for a status conference on June 24, 2021.

The indictment describes a unique "refund fraud" conspiracy and scheme that was first discovered with respect to these defendants in approximately July 2018. PSR ¶ 5. Nunes and her co-conspirators exploited the credit/debit card refund process using reprogrammed electronic point-of-sale (POS) terminals – often stolen from merchants or acquired from sellers of used terminals – to charge fraudulent refunds against a victim merchant's bank account. PSR ¶¶ 4–16. During a typical fraudulent transaction, the conspirators connected an unauthorized POS terminal to the Internet or a phone line and communicated with an intermediary company called a payment processor (e.g., Vantiv/Worldpay and Heartland Payment Systems). Because the conspirators had programmed the terminal to operate as if was linked to a particular merchant (e.g., a customer facing business or retail store), the payment processor validated the terminal and proceeded to authorize monetary transactions on behalf of the imposter merchant. The conspirators then inputted monetary refund requests as if the merchant was refunding a customer's prior purchase via a credit/debit card. They then inputted the refund amount and swiped a credit/debit card. Successful fraudulent refunds were then transferred to credit/debit accounts controlled by the conspirators, who then depleted the funds through credit/debit card charges, cash withdrawals, and money transfers. PSR ¶ 7. If the fraud went undetected, the payment processor would ultimately debit the merchant's associated merchant bank account for the fake refund.

Throughout the life of this scheme, victim banks, merchants, payment processors, and individuals have suffered millions of dollars in actual and attempted losses. PSR ¶¶ 17–21. Federal and state agencies are diligently working to investigate and prosecute several individuals and groups

perpetuating these expansive refund fraud schemes.[1]

The charged conspiracy involves hundreds of fraudulent transactions starting as early as July 2017 (likely much earlier) and continuing until at least February 2019. PSR ¶¶ 6–8, 20. The conspiracy also involved dozens of fraudulent POS terminals and hundreds of credit/debit cards that the conspirators used in their attempts to load and transfer fraudulent refunds. Because many of the swiped debit cards were quickly locked due to suspected fraud, the conspirators had to employ almost an endless supply of new card accounts that they acquired through low-level criminal associates (aka "mules") or using the fraudulent accounts of identity theft victims.

Defendants Johnathon Ward and Monica Nunes were the primary criminal actors in this conspiracy and scheme. PSR ¶¶ 9–21. They worked together to organize and manage the conspiracy, recruited the participants, and had custody of many of the fraudulent POS terminals for the time period charged. While Toilolo was neither a manger nor coordinator in this conspiracy, he did make significant contributions, including supplying terminal ID numbers that conspirators programmed into the terminals so they linked to a particular merchant account. *See, e.g.*, PSR ¶¶ 22–24.

The defendants and a revolving cast of mules moved from house to house, and hotel to hotel, throughout Northern California, Nevada, and Utah and committed refund fraud at numerous locations. The mules supplied the defendants with prepaid credit and debit cards, as well as victim PII profiles to register new cards. They also helped the defendants check balances on the loaded cards and spend the money loaded onto the cards at the defendants' direction.

Investigators have painstakingly reviewed hundreds of pages of bank and payment processing records to determine conservative estimates of the intended and actual losses caused by this conspiracy. They identified all the known POS terminals (tracked by terminal ID identifiers) and access cards that were linked to at least one of the conspirators. They then identified all of the merchants who were victimized by refund fraud via those terminals and/or access cards and identified the associated refund fraud transactions in the time frame of the conspiracy. Two primary payment processors maintained

---

[1] For example, there have been at least two similar criminal cases prosecuted in the Northern District of California involving a similar conspiracy and refund fraud scheme. *See United States v. Mason et al.*, 18-cr-048-LHK (N.D. Cal.) and *United States v. Kholman et al.*, 3:20-mj-71156 (N.D. Cal.). The *Mason* has concluded through sentencing.

records for those transactions: Vantiv/Worldpay, Inc. and Heartland Payment System, Inc., and they produced records showing attempted and successful refund fraud transactions for the victim merchants. During the time frame that Nunes participated in the conspiracy (approximately July 2017 through February 2019), the total intended loss amount (i.e., attempted refund fraud transactions) was at least $4,340,473.75, and total actual loss (i.e., successful refund fraud transactions) was $1,493,561.15 (Vantiv/Worldpay) + $222,463.00 (Heartland) = $1.716,024.15. PSR ¶¶ 21, 27. In her sentencing memo, Nunes does not dispute these numbers. ECF 134.

Nunes has been in and out of jail since her late 20s for mainly theft and fraud offenses. PSR ¶¶ 50–71. Notably, she was convicted on state charges in 2017 for refund fraud that she committed in 2015 and 2016. PSR ¶ 52. This early conduct put her among few California fraudsters who knew how to successfully exploit the merchant refund system for criminal gain. During her CDCR incarceration, she continued her criminal activity by encouraging and advising her criminal associates to continue the refund fraud scheme with Johnathon Ward. PSR ¶ 20. For example, in July 2017, she mailed letters to coconspirators, teaching them how to use POS terminal to perpetrate the scheme and advising them to connect with Ward. PSR ¶ 20. After her release in April 2018, she wasted little time re-connecting with Ward, T. Toilolo, and others to continue the conspiracy and scheme, conducting hundreds of fraudulent transactions and causing over $1.7 million in actual losses. *See, e.g.*, PSR ¶¶ 8, 10–12, 17–19. Given Nunes's extensive experience with refund fraud, she served as an organizer and manager over the conspiracy's acts, including teaching other members how to use POS terminals to defraud merchants. PSR ¶¶ 19, 20, 39.

## II. SENTENCING GUIDELINES CALCULATION

Neither the government nor the defendant has raised a formal objection or factual dispute with respect to the PSR's summary of the defendant's unlawful conduct. Similarly, neither party has raised an objection to the PSR's application of the law and calculation of the defendant's criminal history category and sentencing guidelines. With acceptance of responsibility, the defendant's total offense level is 30, and her sentencing guideline range is 151–188 months (criminal history category V). PSR ¶¶ 31–45, 54–57.

## III. SENTENCING RECOMMENDATION

Consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) shows that a guideline range of 151–188 months in this case appropriately and fairly accounts for the nature and circumstances of the offense – including the scale of the offense and the significant monetary losses that resulted – and the history and characteristics of the defendant. A low-end sentence of 151 months is warranted to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence. The PSR finds nothing in the defendant to warrant either a departure or a variance outside the guidelines. PSR ¶ 120 and Justification. Importantly, the defendant agrees that a 151-month prison sentence is appropriate. ECF 134.

This was a serious financial crime that caused significant monetary losses and hardship to a variety of victims—including banks, payment processors, and merchants that often included small businesses. Moreover, given the complexity and size of this scheme – including the defendants' efforts to continuously change the location of their operations – Nunes was able to perpetrate her fraud for many months without law enforcement detection. Had the defendants in this case not been arrested either on state charges or in this case, Nunes would likely still be perpetrating this fraud today. Indeed, she even continued the scheme while in state prison after being convicted for refund fraud offenses committed in 2015 and 2016. PSR ¶ 20, 52.

Nunes has an extensive criminal history dating back to her late 20s when she was convicted of federal mail theft. PSR ¶ 51. After serving a 15-month BOP sentence, Nunes was placed on supervised release. She committed multiple TSR violations, many of which drug related, and her term was revoked at least twice. PSR ¶ 51. She is clearly addicted to narcotics and fast money schemes. After her supervised released terminated in 2014, it did not take long for her to jump back into her criminal lifestyle. Nunes likely realized that refund fraud was a relatively quick and easy way to generate a lot of money with moderate effort and minimal risk. And much of the money she made was likely wasted on her drug habit. PSR ¶ 86–89. A 151-month sentence is warranted to promote respect for the law, provide just punishment, and provide adequate deterrence to future criminal conduct. See 18 U.S.C. §§ 3553(a)(1)-(2). The defendant clearly did not respect the law and continued her reprehensible acts even after her exposure to the federal criminal system and a state conviction for the same type of fraud she

committed here. Deterrence is particularly important in this case because Nunes has a significant criminal history. A guideline sentence of 151 months is needed to deter the defendant and, importantly, to deter similarly situated criminals who may be tempted to join a similar fraud scheme.

## IV. RESTITUTION

Two victims have requested restitution: the payment processors Vantiv/Worldpay Inc. (now Fidelity National Information Services, Inc.) and Heartland Payment System Inc. PSR ¶¶ 21, 27. For the time period of Nunes's offense, Vantiv/Worldpay has estimated its actual loss to be $1,493,561.15, and Heartland has estimated its actual loss to be $222,463.00, for a total of $1,716,024.15. PSR ¶¶ 21, 27. The defendant does not raise any dispute concerning these calculations. ECF 134.

The government has not received requests for restitution from other entities, including merchant victims and their banks. This is likely due, at least in part, to the fact that the payment processors covered most or all their customers' losses.

## V. CONCLUSION

The Court should sentence the Monica Nunes to 151 months' imprisonment and 5 years of supervised release. The Court should also order restitution of $1,716,024.15 to the appropriate victims. Any shorter sentence would not be sufficient to accomplish the objectives set out by Congress at 18 U.S.C. § 3553(a).

Dated: March 25, 2021

PHILLIP A. TALBERT
Acting United States Attorney

By: /s/ Robert J. Artuz
ROBERT J. ARTUZ
Special Assistant U.S. Attorney